[Civ. No. 3870. Second Appellate District, Division Two.—October 27, 1922.]

## ENRICA STRUPELLE, Respondent, v. MICHELE STRUPELLE, Appellant.

[1] DIVORCE—DEFAULT—INSUFFICIENCY OF EVIDENCE—JUDGMENT—DISMISSAL.—Where in an action for divorce, after the default of the defendant has been entered and the plaintiff has offered such evidence as she is then prepared to adduce, the court orally announces from the bench that "upon the evidence offered an interlocutory decree of divorce cannot be granted," and that "leave is granted plaintiff to offer additional evidence and to amend her complaint if desired," such oral announcement is not a judgment denying to plaintiff the right to a divorce; and the effect of such order having been to set aside the submission of the case, the plaintiff had the right to dismiss the action.

[2] ID.—INTRODUCTION OF EVIDENCE—DISMISSAL OF ACTION.—A plaintiff, even after the introduction of evidence by both sides, may dismiss the action in the manner permitted by subdivision 1 of section 581 of the Code of Civil Procedure, if he do so before the retirement of the jury or before final submission of the case for decision by the court.

[3] ID.—DELAY IN BRINGING ACTION—REASONABLENESS OF.—Whether delay in bringing an action for divorce on the ground of desertion is reasonable or otherwise is a question which must be decided in the light of the circumstances peculiar to each particular case.

[4] ID. — CONNIVANCE—COLLUSION—CONDONATION—INTENT—EVIDENCE. In this action for divorce on the ground of desertion, the trial court having found that defendant, without any cause or excuse and with intent to desert and abandon plaintiff, voluntarily separated himself from her, and ever since, with intent to desert, had willfully and voluntarily lived separate and apart from her, and the evidence of the plaintiff having shown that she had not heard from defendant from the time when he left until shortly prior to the commencement of the divorce action, and that during that period she did not know his whereabouts and received no support from him whatever, those facts were utterly incompatible with connivance, collusion, and condonation; and those facts were entirely inconsistent with any intent on plaintiff's part "to continue the marriage relation," with all its rights and privileges.

[5] ID.—VOLUNTARY SEPARATION—INTENT TO DESERT—EVIDENCE.—In this action for divorce on the ground of desertion, the voluntary

5. Failure to support as abandonment or desertion, notes, 29 L. R. A. (N. S.) 618; 43 L. R. A. (N. S.) 262.

separation of the husband from plaintiff was proved by the direct testimony of plaintiff and her witnesses, while the intent of defendant to desert plaintiff could be inferred from the fact that defendant abandoned plaintiff without apparent cause and left the state, making no provision for her support and giving her no inkling of his whereabouts during the years of his voluntary exile.

[6] ID.—CAUSE FOR DESERTION — EVIDENCE — FINDING — APPEAL.—The defendant, by way of defense, and also as a cause of cross-action, having averred in his answer and likewise in a cross-complaint that he was driven from the family dwelling place by reason of certain alleged acts of cruelty on plaintiff's part, but there having been a sharp conflict in the evidence upon the issues thus raised, it was the province of the trial court to determine the credibility of the witnesses, and its finding in plaintiff's favor could not be disturbed on appeal.

[7] ID.—ADJUDICATION OF PROPERTY RIGHTS—FINAL DECREE.—In an action for divorce, it is proper for the trial court, in its findings, and likewise in the interlocutory decree, to determine the status of the property of the parties and to determine how it ought to be assigned, but the actual assignment of the property should be left for the final decree of divorce.

APPEAL from a judgment of the Superior Court of Santa Barbara County. S. E. Crow, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

B. F. Thomas for Appellant.

W. P. Butcher for Respondent.

FINLAYSON, P. J.—This is an appeal by the defendant from an interlocutory decree of divorce in an action wherein the wife seeks a divorce from the husband on the ground of desertion.

Defendant, according to the court's findings, on August 4, 1911, with intent to desert and abandon plaintiff, voluntarily and willfully separated from her and ever since has voluntarily and willfully lived separate and apart, with intent to desert his wife. The action was commenced April 9, 1920. One of the defenses interposed was that there was an unreasonable lapse of time before the commencement of the action. The court found against defendant on this defense. For the purpose of overcoming any presumption of unreasonable

delay, plaintiff put in evidence the record of a prior action for divorce which she had commenced against defendant on May 12, 1914, in the same court. In that action defendant, who was constructively served with summons by publication, made no appearance. His default having been regularly entered, the action came on for hearing on January 11, 1915, before a judge of the superior court for another county, sitting for the judge of the superior court for Santa Barbara County. After plaintiff had offered such evidence in that action as she then was prepared to adduce, a minute order was entered setting forth, in substance, that the court orally announced from the bench that "upon the evidence offered an interlocutory decree of divorce cannot be granted," and that "leave is granted plaintiff to offer additional evidence and to amend her complaint if desired." Thereafter plaintiff, through her counsel, tried in vain to persuade the judge before whom the cause had been heard to return to Santa Barbara and hear such additional evidence as plaintiff was prepared to adduce. Failing in this effort, plaintiff's counsel, on April 5, 1920, or four days before the commencement of the present action, filed with the clerk of the court a written request for the dismissal of the former action.

[1] Appellant, with all seeming seriousness, now contends that the pronouncement from the bench in the former action announcing in substance and effect that the evidence then adduced was insufficient to justify an interlocutory decree of divorce, but that plaintiff if so advised might offer additional evidence, was tantamount to a solemn judgment of the court formally denying to plaintiff the right to a divorce. It further is urged that the dismissal of the former action was unauthorized and void. Wherefore, it is argued that the "former judgment" is now *res adjudicata*. To state this contention is to answer it. The court's oral announcement from the bench was not a judgment. In effect it was no more than a statement that in the opinion of the court the evidence, in so far as offered, was not sufficient to authorize a divorce, but that the case would be continued indefinitely to enable plaintiff to adduce further testimony should she be so advised. Moreover, the former action was properly dismissed. The plaintiff, "at any time before trial," upon payment of the costs, may dismiss the action by

written request to the clerk, filed with the papers in the case. (Code Civ. Proc., sec. 581, subd. 1). If the former action was submitted for decision, the submission was set aside when leave was granted to amend the complaint and to adduce additional evidence. (*Westbay* v. *Gray,* 116 Cal. 660, 667 [48 Pac. 800].) In *Hancock Ditch Co.* v. *Bradford,* 13 Cal. 637 (cited with approval in *Westbay* v. *Gray, supra*), it was held that the word "trial," as used in that provision of the former Practice Act which corresponds with subdivision 1 of section 581 of the Code of Civil Procedure, means the determination or finding in the case. [2] A plaintiff, therefore, even after the introduction of evidence by both sides, may dismiss the action in the manner permitted by subdivision 1 of section 581 of the Code of Civil Procedure, if he do so before the retirement of the jury or before the final submission of the case for decision by the court. (*Westbay* v. *Gray, supra; MacDermot* v. *Grant,* 181 Cal. 332, 184 Pac. 396].)

[3] Appellant urges here, as he did in the court below, that there was "an unreasonable lapse of time," within the meaning of subdivision 3 of section 124 of the Civil Code, before the commencement of the present action. We should hesitate to say that a lapse of time of any definite length must necessarily and of itself be deemed unreasonable as a matter of law. "It would," says the court in *Locke* v. *Locke,* 153 Cal. 58 [94 Pac. 244], "be attributing to the legislature a very unjust and unreasonable purpose to hold the meaning of the code to be that when a husband is guilty of willful neglect to provide for his wife she must immediately, *or within any particular time,* commence an action for divorce." (Italics ours.) We think that whether delay in bringing an action for divorce on the ground of desertion is reasonable or otherwise is a question which must be decided in the light of the circumstances peculiar to each particular case. Section 125 of the Civil Code defines an unreasonable lapse of time to be such delay "as establishes the presumption that there has been connivance, collusion or condonation of the offense, or full acquiescence in the same, with intent to continue the marriage relation notwithstanding the commission of such offense." Connivance and collusion imply consent to the act of which complaint is made (Civ. Code, secs. 112 and 114); condonation implies

forgiveness, and is revoked when the condonee commits the offense anew (Civ. Code, secs. 115, 121). **[4]** None of these matters of defense could coexist with the facts found by the trial court, namely, that defendant, without any just cause or excuse and with intent to desert and abandon plaintiff, voluntarily separated himself from her, and ever since, with intent to desert, had willfully and voluntarily lived separate and apart from her. Nor is connivance, collusion, or condonation consistent with the testimony given by plaintiff and her witnesses. Plaintiff testified that after defendant, without cause and without giving her any reason or explanation for his conduct, left her and went away, she received no word from him until shortly prior to the commencement of the present action, when he wrote her a letter from a town in Arizona in which he says: ''After a long time silence I now notify you that I am still alive, and I would be glad to hear from you.'' Her testimony also shows that from the time when he left, August 4, 1911, until a few days before the commencement of the present action she did not know his whereabouts, and that during all of this time she received no support from him whatever. With such a state of facts connivance, collusion and condonation are utterly incompatible. Nor did the delay in commencing the present action establish a presumption of ''full acquiescence'' in defendant's desertion, ''with intent to continue the marriage relation.'' The facts testified to by plaintiff and her witnesses are entirely inconsistent with any intent on plaintiff's part ''to continue the marriage relation,'' with all its rights and privileges. An exposition of the law upon this subject may be found in *Thomson* v. *Thomson,* 121 Cal. 11 [53 Pac. 403], *Locke* v. *Locke, supra, Neeley* v. *Neeley,* 179 Cal. 232 [176 Pac. 163], and *Walker* v. *Walker,* 14 Cal. App. 487, 492, 493 [112 Pac. 479].

**[5]** Equally without merit is the contention that the evidence is insufficient to support the finding of desertion. The claim is that there was no corroborative evidence of defendant's intent to desert. Desertion consists of the voluntary separation of one of the married parties from the other and the intent to desert. Both ingredients are to be found in this case. The former is proved by the direct testimony of plaintiff and her witnesses; the latter may be inferred from the fact that defendant abandoned his wife without

apparent cause and left the state of California, making no provision for his wife's support and giving her no inkling of his whereabouts during the years of his voluntary exile. (*Morrison* v. *Morrison,* 20 Cal. 431.)

[6] By way of defense, and also as a cause of cross-action, defendant averred in his answer and likewise in a cross-complaint that he was driven from the family dwelling place by reason of certain alleged acts of cruelty on plaintiff's part. Upon the issues this raised there was a sharp conflict in the evidence. The trial court, giving credence to plaintiff and her witnesses, as was its right, found in the wife's favor upon all the issues thus tendered by defendant's pleadings. It was the province of that court to determine the credibility of the witnesses for the respective parties, and we may not disturb the findings without usurping the functions of a trial judge.

[7] There are no other points worthy of mention, except that which is directed against the power of the trial court to make a final adjudication of the property rights in its interlocutory decree.

The property consists of two lots—lots 19 and 20 of block 286, as designated upon the official map of the city of Santa Barbara. These two lots appear to be adjoining pieces of land, forming one parcel. Lot 20, purchased after the marriage, is community property; lot 19, purchased by the husband before the marriage, is his separate property. On December 27, 1910, which was during the marriage relation, defendant filed a declaration of homestead covering both lots. In its findings, and likewise in its interlocutory decree, the trial court properly determined the *status* of the property and properly determined how it *ought* to be assigned. But the actual assignment of the property should have been left for the final decree of divorce. A court may assign to the innocent party the community property or the homestead "in case of a dissolution of the marriage" (Civ. Code, sec. 146) and "in granting a decree of divorce" (Civ. Code, sec. 147). The interlocutory judgment is not a decree of divorce, nor does it dissolve the marriage. The court, therefore, should not assign or dispose of the community property or homestead until such time as the marriage is absolutely dissolved by the final decree of divorce. (*Remley* v. *Remley,* 49 Cal. App. 489 [193 Pac. 804].) For

this reason the interlocutory decree must be modified. But as the purpose of. the appeal obviously was to obtain a positive reversal, and the modification cannot substantially change the important features of the final judgment to be made upon the expiration of the year from the entry of the interlocutory decree, the appellant should not recover any costs on this appeal.

The interlocutory decree is modified by striking therefrom everything after the paragraph which adjudges that plaintiff shall have and recover a monthly allowance of seventy-five dollars, and by inserting in lieu of the parts so stricken out the following:

"And it is further ordered, adjudged and decreed that plaintiff is entitled to have assigned to her, in and by any final decree of divorce which may be entered herein, all of lot 19, in Block 286, of the City of Santa Barbara, State of California, for and during the term of her natural life; and she also is entitled to have assigned to her, in and by any such final decree, an undivided one-half of lot 20, in said Block 286, as a tenant in common of said lot 20."

As so modified the interlocutory decree will stand affirmed as of the date of its entry, January 3, 1921. Upon entering its final decree of divorce, the trial court will assign the property according to the determination expressed in the interlocutory decree; and when it makes its final decree, it may then, pursuant to the authority conferred by section 140 of the Civil Code, make provision in that decree for such reasonable security for the payment of the sum allowed for the wife's support and maintenance as it may deem proper.

Works, J., and Craig, J., concurred.